UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHENHUA LOGISTICS (HONG KONG) CO., LTD.,<br><br>   Plaintiff,<br><br>  v.<br><br>METAMINING, INC., *et al.*,<br><br>   Defendants.<br>_____/ | No. C-13-2658 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR A WRIT OF ATTACHMENT AND TEMPORARY RESTRAINING ORDER**<br><br>**(Docket No. 8)** |

  Plaintiff Zhenhua Logistics (Hong Kong) Co., Ltd. has filed suit against Defendants Metamining, Inc., Ling Li, Song Qiang Chen, and Ouro Mining, Inc., asserting that Metamining breached a contract that it entered into with Zhenhua and that Metamining fraudulently transferred its assets to the other defendants in order to avoid paying a debt owed to Zhenhua. Zhenhua has moved for a writ of attachment as well as a temporary restraining order ("TRO"). The Court held a hearing on the application for relief on June 20, 2013. This order memorializes the rulings made at the hearing and provides further analysis, where necessary. For the reasons discussed below, Zhenhua's application for relief is **GRANTED** in part and **DENIED** in part.

**I. DISCUSSION**

A. <u>Writ of Attachment</u>

  Under Federal Rule of Civil Procedure 64, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). In California, where this Court is located, an

attachment is an available provisional remedy. Zhenhua seeks to attach more than $29 million for each of the defendants named in the case.

### 1. Metamining

As a preliminary matter, the Court notes that there is some question as to whether an attachment is a possible remedy because the agreement between Zhenhua and Metamining included a Singapore choice-of-law provision. It is not clear from the face of the contract whether the parties intended the agreement to be governed by Singapore substantive law only, or both Singapore substantive and procedural law. Because no evidence has been submitted on this issue, the Court assumes at this juncture that only Singapore substantive law is applicable, such that an attachment under California procedural law is an available remedy. Metamining is free to ask for reconsideration if it has evidence to support the contention that the parties intended to incorporate both Singapore substantive and procedural law, that Singapore law does not allow for attachments or other similar provisional remedies, or that Singapore law does provide for such remedies but under markedly different standards.

Under California law, a court

> shall issue a right to attach order, which shall state the amount to be secured by the attachment determined by the court in accordance with Section 483.015 or 483.020, if it finds all of the following:
>
> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Cal. Code Civ. Proc. § 484.090(a). With respect to the first factor, "an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." Cal. Code Civ. Proc. § 483.010(a).

2

In the case at bar, the Court finds first that the claim upon which the attachment is based is one upon which an attachment may be issued. Zhenhua has brought a claim for breach of contract against Metamining. At least part of the claim consists of a fixed or readily ascertainable amount not less than $500 – *i.e.*, the failure to pay back the $10 million advance (plus interest).[1] The Court notes, however, that, Metamining was to repay Zhenhua in installments with respect to that $10 million advance. At this juncture, Metamining has failed to pay back only the first installment of $1 million. The remaining amount is not due until December 31, 2013, and Zhenhua has not shown that, upon a breach of the contract, it was entitled to accelerate the entire amount due. Although Zhenhua argues that this is permissible under Singapore law, the Court does not find the declaration from Singaporean counsel persuasive, particularly as he fails to provide an explanation for this specific problem.

The Court also finds that Zhenhua has established the probable validity of its claim for the $1 million, which is an amount greater than zero. The contract and addendum make clear that Metamining was to repay Zhenhua $1 million by December 31, 2012; Zhenhua has represented that it was not paid; and Metamining has failed to tender any evidence to the contrary.

Finally, the Court finds that the attachment for $1 million is not sought for a purpose other than the recovery on the claim upon which the attachment is based. The Court acknowledges Metamining's contention to the contrary because "[a]n attachment may not be issued on a claim which is secured by any interest in real property arising from agreement." Cal. Code Civ. Proc. § 483.010(b). But Metamining has not at this juncture submitted sufficient evidence to show such a security placed on real property.[2] *See, e.g.*, Poynder Decl., Ex. H (Security Agreement § 2.1).

Accordingly, as to Metamining only, the Court finds that an attachment in the amount of $1 million is proper. Zhenhua is entitled to attach all corporate property of Metamining which is

---

[1] The Court rejects Zhenhua's argument that it is clearly owed an additional $17.5 million in profit sharing under the contract. For example, it is not clear whether Zhenhua was entitled to profit sharing only when the coal was actually sold. That amount owed is thus not fixed or readily ascertainable.

[2] As the Court stated at the hearing, Metamining is free to ask the Court to rescind the attachment order if it can provide competent evidence that Zhenhua's claim is secured by an interest in real property.

subject to attachment pursuant to subdivision (a) of California Code of Civil Procedure Section 487.010. *See* Cal. Code Civ. Proc. § 484.020(e). The Clerk of the Court is instructed to issue a writ of attachment in accordance with the above upon Metamining's posting of an undertaking in the amount of $10,000. *See* Cal. Code Civ. Proc. § 489.220.

### 2. Mr. Li, Mr. Chen, and Ouro Mining

Zhenhua contends that assets of Mr. Li, Mr. Chen, and Ouro Mining are subject to attachment because, under California law, in an action for relief against a fraudulent transfer, a creditor may obtain "[a]n attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure." Cal. Civ. Code § 3439.07(a)(2).

At this juncture, Zhenhua has not submitted sufficient evidence that there was a fraudulent transfer to Ouro Mining, and therefore an attachment is not appropriate.

Similarly, the Court finds that Zhenhua has not submitted sufficient evidence that there was a fraudulent transfer to Mr. Li or Mr. Chen, and therefore, the Court shall not order an attachment of any of their property. However, as discussed below, because there are serious questions as to whether there was indeed a fraudulent transfer, a temporary restraining order is proper with respect to the two individuals.

### B. Temporary Restraining Order

As a preliminary matter, the Court notes that, at the hearing, Zhenhua limited the scope of the TRO sought. For example, as to Metamining, Zhenhua asked only that it be enjoined from transferring any assets outside of California (*i.e.*, the jurisdiction of this Court). As to Ouro Mining, Zhenhua asked that it be enjoined from transferring any money or property that it fraudulently obtained from Metamining. As to Mr. Li and Mr. Chen, Zhenhua asked that they be enjoined from transferring any money or property that they obtained from Metamining.

### 1. Metamining

The Court finds that a TRO as to Metamining is appropriate because, based on the record presented, Zhenhua has established that there are serious questions going to the merits (*i.e.*, whether Metamining fraudulently transferred assets), that Zhenhua is likely to suffer irreparable injury

4

without preliminary injunctive relief, and that the balance of hardships tips sharply in its favor. *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (noting that a preliminary injunction may issue upon a showing that there are serious questions going to the merits, that the movant is likely to suffer irreparable harm, that the balance of equities tips sharply in the movant's favor, and that an injunction is in the public interest)

Contrary to what Metamining argues, Zhenhua has presented circumstantial evidence to support its claim that Metamining fraudulently transferred assets. For example, Zhenhua gave the $10 million advance to Metamining in or about May 2010 and, approximately five months later, Metamining established Ouro Mining and purchased the Heavener Mine. Also, in March 2013, Metamining's website still listed Ouro Mining's mine (the Heavener Mine) as an asset but, in May 2013, there was no longer any mention of Ouro Mining or the Heavener Mine on Metamining's website. *See* Frevola Decl. ¶ 12 & Ex. F; *see also* Frevola Decl. ¶ 13 & Ex. G (also noting that Ouro Mining was dropped from the "Contact Us" webpage). As noted above, only a few months later, in December 2013, Metamining is due to pay Zhenhua the second installment which is more than $10 million. Finally, the Court notes that it is not insignificant that Metamining failed to submit any evidence that, *e.g.*, Mr. Li and Mr. Chen paid consideration for the shares they have in Ouro Mining.

Zhenhua has also presented evidence that it will likely suffer irreparable harm because, without an injunction, Metamining may continue to transfer assets such that it will have nothing left to pay back even the $10 million advance. In this regard, the Court notes that Metamining has not offered any evidence that it has assets of such magnitude such that any concern on the part of Zhenhua is essentially insignificant.

Finally, the balance of hardships tips sharply in Zhenhua's favor, particularly because Metamining has failed to offer any evidence that a brief injunction as sought herein – lasting only 14 days – will cause it to suffer any hardship, let alone an irreparable one.

Accordingly, the Court hereby grants Zhenhua's request for relief and enjoins Metamining; its officers, agents, servants, employees, and attorneys; and other persons in active concert or participation with Metamining or the individuals enumerated above, from transferring any assets belonging to Metamining outside of California. The TRO expires at 5:00 p.m., July 4, 2013. The

Court shall not, at this juncture, require Metamining to post security beyond the $10,000 discussed above. If the security is not posted by June 24, 2013, then the TRO as to Metamining shall be rendered null and void.

### 2. Ouro Mining

As noted above, Zhenhua has asked that Ouro Mining be enjoined from transferring any money or property that it fraudulently obtained from Metamining. The Court denies this request for relief because there is insufficient evidence that Metamining fraudulently transferred any assets (including but not limited to Ouro Mining stock or the Heavener Mine) to Ouro Mining. The Court also notes that Zhenhua's request for relief is problematic because the TRO requested is vague. *See* Fed. R. Civ. P. 65(d)(1)(C) (requiring that a TRO be "describe[d] in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required").

### 3. Mr. Li and Mr. Chen

Similar to above, the Court finds that a TRO as to Mr. Li and Mr. Chen is appropriate because, based on the record presented, Zhenhua has established that there are serious questions going to the merits (*i.e.*, whether Metamining fraudulently transferred assets to these individuals), that Zhenhua is likely to suffer irreparable injury without preliminary injunctive relief, and that the balance of hardships tips sharply in its favor. With respect to the fraudulent transfer, the Court notes once again that there is no evidence (*e.g.*, a declaration from either individual) that Mr. Li and/or Mr. Chen paid Metamining consideration for the shares they have (or entities in their control have) in Ouro Mining.

The Court, however, rejects Zhenhua's suggestion that Mr. Li and Mr. Chen be enjoined from transferring *any* assets they received from Metamining. Under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), preliminary injunctive relief may issue to freeze a defendant's assets only to the extent that they are related to the property at issue in the case. *See Cagelosi v. Silvar Advisors, LP (In re USA Commer. Mortg. Co.)*, 397 Fed. Appx. 300, 306 (9th Cir. 2010). Because Zhenhua has only presented evidence suggesting that Metamining transferred shares in Ouro Mining to Mr. Li and/or Mr. Chen (or entities in their control), the Court shall issue a TRO that is limited to a transfer of that stock alone.

Accordingly, the Court hereby grants Zhenhua's request for relief and enjoins Mr. Li and Mr. Chen; their agents, servants, employees, and attorneys; and other persons in active concert or participation with Mr. Li and/or Mr. Chen or the individuals enumerated above, from transferring any shares they own in Ouro Mining. The TRO expires at 5:00 p.m., July 4, 2013. The Court shall require Zhenhua, at this juncture, to post only limited security in the amount of $5,000. If the security is not posted by June 24, 2013, then the TRO as to Mr. Li and Mr. Chen shall be rendered null and void.

## II.  **CONCLUSION**

For the foregoing reasons, Zhenhua's application for relief is granted in part and denied in part.

(1) The Clerk of the Court is instructed to issue a writ of attachment in accordance with the above upon Metamining's posting of an undertaking in the amount of $10,000.

(2) The Court enjoins Metamining; its officers, agents, servants, employees, and attorneys; and other persons in active concert or participation with Metamining or the individuals enumerated above, from transferring any assets belonging to Metamining outside of California. The TRO expires at 5:00 p.m., July 4, 2013. The Court shall not, at this juncture, require Metamining to post security beyond the $10,000 discussed above. If the security is not posted by June 24, 2013, then the TRO as to Metamining shall be rendered null and void.

(3) Mr. Li and Mr. Chen; their agents, servants, employees, and attorneys; and other persons in active concert or participation with Mr. Li and/or Mr. Chen or the individuals enumerated above, from transferring any shares they own in Ouro Mining. The TRO expires at 5:00 p.m., July 4, 2013. The Court shall require Zhenhua, at this juncture, to post only limited security in the amount of $5,000. If the security is not posted by June 24, 2013, then the TRO as to Mr. Li and Mr. Chen shall be rendered null and void.

The Court shall hold a further hearing on July 3, 2013, at 3:30 p.m. to determine whether a preliminary injunction should be issued. Defendants shall be permitted to file a brief in opposition by 4:00 p.m., June 26, 2013. Zhenhua shall be allowed to file a reply brief by 4:00 p.m., June 28, 2013. The Court advises Zhenhua that it is not inclined to award further interim relief with respect

to Metamining at least, as Zhenhua has the option of initiating arbitration against Metamining pursuant to their agreement and, under the SIAC arbitration rules, a party may ask an arbitrator for injunctive relief.

This order disposes of Docket No. 8.

IT IS SO ORDERED.

Dated: June 20, 2013

EDWARD M. CHEN
United States District Judge