UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHENHUA LOGISTICS (HONG KONG) CO., LTD.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METAMINING, INC., *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-13-2658 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION**<br><br>**(Docket No. 60)** |

　　　　Previously, the Court issued a temporary restraining order ("TRO") granting Plaintiff Zhenhua Logistics (Hong Kong) Co., Ltd. certain relief with respect to Defendants Metamining, Inc., Ling Li, and Song Qiang Chen. *See* Docket No. 31 (order). Currently pending before the Court is Zhenhua's motion for a preliminary injunction in which it asks the Court to convert the TRO into preliminary injunctive relief. Having considered the parties' briefs and accompanying submissions,[1] the oral argument of counsel, and all other evidence of record, the Court hereby **DENIES** the motion for a preliminary injunction.

**I.　DISCUSSION**

A.　Legal Standard

　　　　"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[1] The Court grants Zhenhua's motion for leave to file a supplemental declaration. *See* Docket No. 60 (motion).

balance of equities tips in his favor, and that an injunction is in the public interest.'" *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).  The Ninth Circuit has held that

> the "serious questions" approach *Winter* when applied as part of the four-element *Winter* test.  In other words, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met.

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

As to the other two elements of the *Winter* test, the element of irreparable harm is particularly important.  As made clear by Supreme Court case law, the mere possibility of irreparable harm is not sufficient; irreparable harm must be likely. *See Winter*, 555 U.S. at 22 (stating that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").  Where there is an adequate remedy of law, there is no irreparable harm. *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (noting that the "basic doctrine of equity jurisprudence [provides] that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (stating that, "[t]o satisfy [the irreparable harm] prong of the preliminary injunction test, [the moving party] must show that it is 'likely to suffer irreparable harm,' that is, harm for which there is no adequate remedy at law"); *Moore v. Consolidated Edison Co. Of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (stating that, "[w]here there is an adequate remedy at law, . . . injunctions are unavailable except in extraordinary circumstances"); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (stating that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies") (internal quotation marks omitted); *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (Spero, J.) (stating that "Plaintiff has proffered no basis to request injunctive relief because an adequate remedy at law exists").

B.  <u>Metamining</u>

    1.  <u>Likelihood of Irreparable Harm</u>

Zhenhua has failed to made an adequate showing of a likelihood of irreparable harm in the absence of a preliminary injunction. If anything, the Buisset declaration submitted by Zhenhua indicates that it will not suffer irreparable harm without a preliminary injunction from this Court because Zhenhua may seek preliminary injunctive relief – including security for its claims – from the Singapore arbitrator. *See* Docket No. 41 (Buisset Decl. ¶¶ 20, 22) (stating that "[t]he Singapore arbitral tribunal has broad discretionary powers to order interim relief, including for security for the claim [under the International Arbitration Act]"; also stating that, under Rule 26 of the SIAC, an arbitral tribunal may issue an order or award granting an injunction or any other interim relief, including "emergency interim relief prior to the constitution of the Tribunal"). Thus, in effect, Zhenhua has an adequate remedy at law available to it, which renders preliminary injunctive relief inappropriate.

While Mr. Buisset also testifies in his declaration that there are limits to a Singapore arbitrator's power to order interim relief, the Court is not persuaded by this testimony. For example, Mr. Buisset states that there are limits because, "[u]nless specifically agreed by the parties, arbitrators lack the power to enforce their measures and cannot generally impose penalties for non-compliance." Docket No. 41 (Buisset Decl. ¶ 24). But Zhenhua may be able to obtain full relief, including interim relief to secure any judgment, against Metamining which is a party to the arbitration (which would then obviate the need to obtain relief against Mr. Li and Mr. Chen). Mr. Buisset claims as another limitation "uncertainty over whether orders made by arbitrators are enforceable outside Singapore." Docket No. 41 (Buisset Decl. ¶ 24). But Zhenhua ignores the power of the arbitration tribunal to require a party such as Metamining to post security. Furthermore, this Court is not convinced a court outside of Singapore where the party's assets are located (such as this Court) is not able to enforce an arbitration order providing for interim relief. Zhenhua has not pointed to a legal prohibition preventing this Court from domesticating any order or judgment coming from the arbitration tribunal. Moreover, Zhenhua has not demonstrated that, even if the arbitration tribunal did not have the power to impose remedies against assets outside of

Singapore, why this Court would not be able to afford full faith and credit, collateral estoppel, or at least substantial deference to any findings made by the tribunal should Zhenhua seek to come back to this court seeking interim relief based on the order of the arbitration tribunal. The Buisset declaration does not make any assertion to the contrary.

As a final point, the Court acknowledges Zhenhua's argument that only its contract claim is subject to arbitration, and not its claim for fraudulent conveyance. But it appears that the arbitration provision applies to contract and tort claims alike; the arbitration provision in the agreement (§ 12.5) states: "*All disputes*, if any, shall be settled through friendly negotiations. In case no agreement can be reached, such dispute shall be submitted to Singapore international arbitration center, whose arbitration shall be final and binding to both parties" (emphasis added). More important, even if only the contract claim were subject to arbitration, the fact remains that Zhenhua is seeking preliminary relief based on the alleged fraudulent transfer *in aid of* the arbitration of its contract claim. Presumably the arbitration tribunal has the power to issue ancillary orders in aid of its jurisdiction – that is one of the purposes of empowering the tribunal with the power to issue interim relief.

### 2. Likelihood of Success on the Merits

Previously, the Court found that Zhenhua had presented circumstantial evidence to support its claim that Metamining had fraudulently transferred assets. *See* Docket No. 31 (Order at 5). However, Metamining now has had a fuller opportunity to present evidence in support of its position that there was no fraudulent transfer. For example, Metamining has tendered evidence that the $5 million that Metamining used to make an initial payment to buy the Heavener Mine came from Metawise and a third party. *See* Docket No. 59 (Supp. Chen Decl. ¶ 6 & Ex. C) (agreement between Metawise and First Space).

In light of this evidence, the Court cannot say that Zhenhua, at this juncture, has established a likelihood of success on the merits. The Court acknowledges that Zhenhua has also supplemented the record with evidence that there was a fraudulent transfer. *See* Docket No. 60 (Liqui Decl., Exs. A-B) (balance sheet and spreadsheet regarding contributions by Metamining to Spiro Mine). While

such evidence arguably raises serious questions going to the merits, it is not sufficient to establish a likelihood of success on the merits on the current record.

More to the point, however, the dispute highlighted by the competing factual submissions and conflicting inferences the parties ask this Court to draw demonstrates that the resolution of these issues sought by Zhenhua requires the Court to invade the province of the arbitrator who may well consider those same issues in deciding whether interim relief is warranted to protect Zhenhua's contract claim. For this reason, it is appropriate for the Court to defer to the arbitral process which was agreed upon by the parties.

### 3. Balance of Equities

Because Zhenhua has at best established serious questions going to the merits, it must show that the hardship balance tips sharply in its favor. *See Alliance*, 632 F.3d at 1132. Zhenhua is not able to meet this showing in light of its inability to establish a likelihood of irreparable harm. Also, Metamining has made some showing that a preliminary injunction (which would prevent it from disposing of assets outside of California) would impair it from conducting its regular business, particularly because three of its assets are located outside of California.

### 4. Public Interest

The public interest factor either is neutral or weighs against Zhenhua because it has the ability to seek a preliminary injunction from the arbitration and it voluntarily agreed to arbitrate.

### 5. Summary

For the foregoing reasons, the Court concludes that a preliminary injunction against Metamining is not warranted. In so ruling, the Court does not bar Zhenhua from seeking relief from this Court should, *e.g.*, an arbitrator issue preliminary injunctive relief to Zhenhua which Zhenhua then seeks to enforce in this Court or should Zhenhua demonstrate that, despite diligent attempts to exhaust arbitral remedies, the tribunal refuses to issue interim relief on ground unrelated to the merits.

## C. Mr. Li and Mr. Chen

A preliminary injunction against Mr. Li and Mr. Chen is also not appropriate.

First, as above, Zhenhua has failed to establish a likelihood of irreparable harm. For example, Zhenhua has represented that the injunction it wants "is solely designed to preserve the assets under attachment." Reply at 17. But it has made no showing that Metamining does not have assets of $1 million in California such that a preliminary injunction against Mr. Li and Mr. Chen is also necessary. Furthermore, as the Court notes above, if Zhenhua is able to get interim relief from the arbitrator with respect to Metamining, then this will moot out any need for interim relief against the individual defendants.

Second, as above, Zhenhua has thus far established at most serious questions going to the merits rather than a likelihood of success. Mr. Li and Mr. Chen have presented evidence that the shares of Ouro stock given to them by Metamining were not without any consideration because they were the ones who initially provided the funds for the purchase of the Heavener Mine.

Third, the balance of hardships does not tip sharply in Zhenhua's favor. In this regard, the Court takes note that the preliminary injunction would prevent the individual defendants from transferring any assets they own in Ouro even though those assets likely exceed the $1 million that is subject to attachment (with respect to Metamining).

Finally, the Court notes that Zhenhua, by asking the Court to make a ruling based on the alleged fraudulent transfer, is essentially asking the Court to address the same issues that the Court has hesitancy to address because it will invade the province of the arbitration to which Zhenhua voluntarily agreed.

///
///
///
///
///
///
///
///

## II.   CONCLUSION

For the foregoing reasons, the Court denies the motion for a preliminary injunction, but without prejudice.

Because the TRO is no longer in effect as of July 4, 2013, at 5:00 p.m., Zhenhua shall thereafter have the right to seek the return of the security posted with the Clerk of the Court.

This order disposes of Docket No. 60.

IT IS SO ORDERED.

Dated: July 3, 2013

_____

EDWARD M. CHEN

United States District Judge

7