UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHENHUA LOGISTICS (HONG KONG) CO., LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>METAMINING, INC., *et al.*,<br><br>        Defendants.<br>_____/ | No. C-13-2658 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**(Docket No. 39)** |

       Previously, the Court issued an order in which it gave Plaintiff Zhenhua Logistics (Hong Kong) Co., Ltd. the right to attach Defendant Metamining, Inc.'s property in an amount up to $1,000,000. *See* Docket No. 31 (Order at 7); *see also* Docket No. 49 (writ of attachment). A week after the Court's order on the right to attach was issued, Zhenhua filed the currently pending motion to reconsider in which it asked the Court to increase the amount of the attachment from $1,000,000 to $12,980,365.30. *See* Docket No. 39 (Mot. at 1). The Court rejected Zhenhua's attempt to characterize its request for relief as a motion to reconsider: "Contrary to what [Zhenhua] argues, it is not really asking the Court to reconsider its attachment order of June 20, 2013. Rather, [it] is asking the Court to issue a new writ of attachment for additional money." Docket No. 52 (Order at 1). Thus, what is currently pending before the Court is not a motion to reconsider, but rather a motion for a new or successive writ of attachment, in which Zhenhua seeks the right to attach additional property up to the amount of $11,980,365.30.

Case 3:13-cv-02658-EMC   Document 90   Filed 08/05/13   Page 2 of 9

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Zhenhua's request for relief.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Logistic Cooperation Agreement (May 2010)

In May 2012, Zhenhua and Metamining entered into a Logistic Cooperation Agreement. *See* Docket No. 40 (Huang Decl., Ex. A) (agreement).

In the agreement, Metamining represented that it owns 100% of the mining and selling rights of the Coal Creek Mineral coal mine. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 2.1). Zhenhua agreed to give Metamining $10 million upfront to pay for the cost of transporting three shipments of coal from the mine (located in Oklahoma) to New Orleans. Each shipment was estimated to be about 55,000 tons. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 2.2). Metamining was to use the money only for "the inland logistics project of [the] coal mine." Docket No. 40 (Huang Decl., Ex. A) (Agreement § 2.3). Metamining agreed to have the first shipment ready no later than November 2010. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement §§ 2.3, 4). Thereafter, shipments would take place every 30 to 45 days. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement §§ 2.5, 4).

Although the parties agreed that Zhenhua would initially pay for the cost of the first three shipments of coal ($10 million), the parties contemplated that more coal would actually be shipped (ultimately to China). More specifically, the parties agreed that 1.5 million tons would be shipped over the course of three-and-a-half years. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 3.2). The parties also agreed that both parties would have the right to sell the coal, *see* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 2.5), and that Zhenhua would share in the profits. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 3.3). It appears that, ultimately, Metamining would pay Zhenhua back for the $10 million advanced for the first three shipments on the back end. *See* Docket No. 40 (Huang Decl., Ex. A) (Agreement § 3.4) (providing that the $10 million "shall be deducted from the payment for the goods of the latter three shipments according to the principle of returning the overcharge and demanding payment of the shortage until this Agreement is executed completely").

2

If Metamining failed to deliver coal to Zhenhua as stipulated in the agreement, then Metamining was obligated to "purchase the same quality goods or other goods of equivalent value from the market and deliver[] it to [Zhenhua]." Docket No. 40 (Huang Decl., Ex. A) (Agreement § 9.2).

Furthermore, if Metamining (1) failed to deliver coal, including for the first shipment due by November 2010, *and* (2) failed to purchase the same quality goods or other goods of equivalent value, then Metamining agreed to "un-conditionally transfer" a 10% equity interest in the coal mine to Zhenhua. Docket No. 40 (Huang Decl., Ex. A) (Agreement § 11).

Finally, Metamining agreed that, if the shipments of the coal were delayed for more than 15 days due to non-force majeure, then it would pay Zhenhua "an interest of 7.5% annualized rate based on USD 10 million on a daily basis." Docket No. 40 (Huang Decl., Ex. A) (Agreement § 10.2).

Under the agreement, the agreement constituted "the sole agreement between the parties for the logistics cooperation of the coking coal" and "[a]mendments to this contract shall be valid only if agreed in writing and duly signed by both parties." Docket No. 40 (Huang Decl., Ex. A) (Agreement §§ 12.1-12.2).

B. <u>August 31, 2012, Letters</u>

On August 31, 2012, Mr. Li signed two letters on behalf of Metamining, which were addressed to Zhenhua. The subject line of both letters referenced the Logistic Cooperation Agreement.

The first letter shall hereinafter be referred to as the "interest letter." The second letter shall hereinafter be referred to as the "profit-sharing letter."

In the interest letter, Metamining confirmed (1) that Zhenhua had given Metamining an advance payment of $10 million; (2) that coal was to be ready to be shipped no later than November 2010; (3) that no coal had in fact been shipped (up to that date); (4) that there was no force majeure event to account for the lack of shipments; and (5) that Zhenhua was thus entitled to annualized interest of 7.5% per year on the $10 million (under § 10.2 of the agreement). Accordingly, Metamining confirmed that, for the period December 1, 2010, to December 31, 2012, it owed

Zhenhua **$1,563,698.63 in interest**. *See* Docket No. 40 (Huang Decl., Ex. C) (interest letter). Metamining stated that "[w]e will pay the 2010-2012 Interest forthwith on first written demand from Zhenhua." Docket No. 40 (Huang Decl., Ex. C) (interest letter). The letter was signed by Metamining only and not by Zhenhua.

In the profit-sharing letter, Metamining confirmed (1) that Zhenhua had given Metamining an advance payment of $10 million; (2) that coal was to be ready to be shipped no later than November 2010; (3) that no coal had in fact been shipped (up to that date); (4) that there was no force majeure event to account for the lack of shipments; and (5) that Zhenhua was thus entitled to profits (under §§ 3.2 and 3.3 of the agreement). Accordingly, Metamining confirmed that, for the period November 1, 2010, to December 31, 2012, "the sum of **US$10,416,666.67 of profit** is due and payable by us to Zhenhua." Docket No. 40 (Huang Decl., Ex. D) (profit-sharing letter) (emphasis added). Metamining stated that "[w]e will pay the 2010-2012 Profit forthwith on first written demand from Zhenhua." Docket No. 40 (Huang Decl., Ex. D) (profit-sharing letter). The letter was signed by Metamining only and not by Zhenhua.

In a declaration, Mr. Li of Metamining asserts that "both letters were drafted by Zhenhua and presented to Metamining for signature during a meeting that took place in California." Docket No. 66 (Li Decl. ¶ 3). Mr. Li also maintains that he was

> concerned about the text of the letters and expressed my concerns to the persons present at the meeting, including Zhenhua representative[] Mr. Tong Li and a representative from Zhenhua's legal department . . . . I was told by Mr. Tong Li that Mr. Mingtien Liu, president of Zhenhua . . . , wanted the letters because Zhenhua's investment in the Coal Creek Mine had not yet generated any financial returns and Mr. Liu felt that it would help his position to be able to show the letters to the auditors and government official to whom he reported. It was my understanding, based on the discussions at that meeting, that Zhenhua would not use the letters for any other purpose. Based on these explanations, I signed the letters. When I signed the August 31, 2012 letters I understood that they were not amendments to the Logistic Agreement because of what I was told about their purpose, and because they were not signed by Zhenhua [as required by § 12.1 of the agreement].

Docket No. 66 (Li Decl. ¶ 4).

In a reply declaration submitted by Zhenhua, Mr. Huang (a vice president of Zhenhua) states that he "do[es] not know what importance, if any, the Court may attach [to the fact that Zhenhua did

not sign the August 31, 2012, letters], but in case the Court considers it to be significant, I have today [July 18, 2013] signed each of the August 31, 2012 letters and sent them to Metamining." Docket No. 71 (Huang Reply Decl. ¶ 3).

C.  Addendum to Agreement (October 2012)

In October 2012, approximately two months after the above letters were signed by Metamining, Metamining and Zhenhua signed a first addendum to the Logistic Cooperation Agreement. The addendum appears to make a reference to the interest letter, stating that Zhenhua made a prepayment of $10 million to Metamining and that, "on Aug[.] 31, 2012[,] [Metamining] confirmed that up to Dec[.] 31, 2012, a sum of US$1,563,698.63 in interest of pre-payment is due and payable. The addendum goes on to state that the purpose of the addendum is "to fix the re-payment and performance schedule agreed [to] by the Parties." Docket No. 40 (Huang Decl., Ex. B) (Addendum at 2).

Under the addendum, the parties agreed that Metamining would pay the above-stated interest (*i.e.*, $1,563,698.63) and the prepayment (*i.e.*, $10 million) in installments. The first installment was to be in the amount of $1 million and was to be paid "before" December 31, 2012. Docket No. 40 (Huang Decl., Ex. B) (Addendum § 2). The second installment was to be in the amount of $10,563,698.63 and was to be paid "before" December 31, 2013. Docket No. 40 (Huang Decl., Ex. B) (Addendum § 2).

In addition to the above, the addendum provided that "[t]he Parties shall abide by clause[s] 3.2 and 3.3 of the Agreement on the profit-sharing." Docket No. 40 (Huang Decl., Ex. B) (Addendum § 3). The addendum further provided that "[o]ther terms of the Agreement shall remain in full force." Docket No. 40 (Huang Decl., Ex. B) (Addendum § 6).

D.  Demands Based on August 31, 2012, Letters

In its original and amended complaints, and in its previously filed papers, Zhenhua made no mention of the August 31, 2012, letters. Zhenhua did not even reference the letters in its first motion for an attachment (in which it sought an attachment of more than $29 million).

On June 20, 2013, this Court issued its order in which it granted Zhenhua the right to attach up to $1 million. *See* Docket No. 31 (order). It was only after this ruling that Zhenhua, for the first

time, made a demand of Metamining to pay the interest and profit identified in the two letters of August 31, 2012. *See* Docket No. 40 (Huang Decl., Exs. E-F) (demand letters, dated June 24, 2013). In the currently pending motion, Zhenhua seeks the right to attach the $1.5 million and $10.4 million identified in the two letters (approximately $12 million total).

## II.  DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 64, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). In California, where this Court is located, an attachment is an available provisional remedy. Zhenhua seeks to attach approximately $12 million based on the interest letter and the profit-sharing letter. Zhenhua has provided evidence that it made demands for payment of the interest and profit described in the letters in late June 2013 (*i.e.*, a few days after the Court's hearing on the first motion for a right to attach order, in which it limited the attachment to $1 million). *See* Docket No. 40 (Huang Decl. ¶¶ 5-6).

Under California law, a court

> shall issue a right to attach order, which shall state the amount to be secured by the attachment determined by the court in accordance with Section 483.015 or 483.020, if it finds all of the following:
>
> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Cal. Code Civ. Proc. § 484.090(a). With respect to the first factor above, California Code of Civil Procedure § 483.010(a) provides that "an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." Cal. Code Civ. Proc. § 483.010(a).

B.   Probable Validity

Zhenhua argues that the only issue for the Court is whether the $12 million it seeks to attach is a fixed or readily ascertainable amount because the Court has already addressed the other § 484.090(a) factors above in conjunction with its first order granting Zhenhua the right to attach $1 million.

The Court does not agree. In particular, the probable validity factor must be evaluated anew. Previously, the Court simply found that

> Zhenhua has established the probable validity of its claim for the $1 million, which is an amount greater than zero. The contract and addendum make clear that Metamining was to repay Zhenhua $1 million by December 31, 2012; Zhenhua has represented that it was not paid; and Metamining has failed to tender any evidence to the contrary.

Docket No. 31 (Order at 3). The Court made no conclusions as to whether Zhenhua demonstrated the probable validity that (1) it is owed an additional $12 million and that (2) that amount must be paid upon Zhenhua's demand.

As to probable validity for the $12 million, Metamining acknowledges that Zhenhua has claimed a breach of the parties' Logistic Cooperation Agreement. But, Metamining argues, the $1.5 million in interest and $10.4 million in profit that Zhenhua now seeks to attach are not based on the Logistic Cooperation Agreement – or even on the addendum to the agreement – but rather exclusively on the interest and profit letters (dated August 31, 2012). Metamining contends that the interest and profit letters can be given no consideration because (1) they are not amendments to the agreement and (2) they were superseded by the addendum to the agreement.

1.   Amendments to the Agreement

The Court agrees with Metamining that the interest and profit letters are not amendments to the Logistic Cooperation Agreement. First, the letters were signed by Metamining only, and not by Zhenhua, and, under the Logistic Cooperation Agreement, "[a]mendments to this contract shall be valid only if agreed in writing and duly signed by *both parties*." Docket No. 40 (Huang Decl., Ex. A) (Agreement § 12.1) (emphasis added). Although Zhenhua has now – after the fact – signed the letters, it has cited no authority to support its theory that its belated signing can cure the problem,

7

1 particularly when there was, subsequent to the signing of the letters by Metamining, an addendum
2 that was signed by both parties.
3    Second, as Metamining points out, it is clear that neither party considered the letters to be
4 amendments to the Logistic Cooperation Agreement because, when they did agree to the addendum
5 to the contract, they called the addendum "ADDENDUM NO. 1." *See* Docket No. 40 (Huang Decl.,
6 Ex. B) (addendum). If the parties had considered the interest and profit letters to be amendments to
7 the Logistic Cooperation Agreement, then, presumably, they would have called the addendum
8 something other than "ADDENDUM NO. 1." Instead, it appears that ADDENDUM NO. 1, as a
9 formal addendum to the contract, simply referenced the letters; hence, the letters themselves were
10 not intended as addendums to or a modification of the Logistic Cooperation Agreement.

2.    Superseded by the Addendum

12    Because the interest and profit letters are not amendments to the Logistic Cooperation
13 Agreement, the only question remaining is whether the letters might still be given some effect,
14 particularly when there is an integration clause in the agreement. *See* Docket No. 40 (Huang Decl.,
15 Ex. A) (Agreement § 12.2) (providing that the contract "is the sole agreement between the parties
16 for the logistics cooperation of the coking coal"). It is conceivable that the letters could, for
17 example, serve as parol evidence to assist in the interpretation of the parties' contractual agreement.
18 In this regard, the parties seem to agree that Singapore law governs the agreement, *see* Docket No.
19 40 (Huang Decl., Ex. A) (Agreement § 12.5) (providing that "[t]his agreement is applicable to
20 Singapore law"); yet neither party has provided any information as to what the law of Singapore is
21 with respect to parol evidence, if any. Zhenhua has submitted the Buisset declaration to support its
22 position that Metamining is obligated to pay the interest and profit identified in the letters and that
23 this obligation is not affected by the terms of the addendum, *see, e.g.*, Docket No. 41 (Buisset Decl.
24 ¶¶ 12, 16) (testifying that Metamining's obligation to pay the interest and profit identified in the
25 letters is not affected by the terms of the addendum), but the Buisset declaration does not address the
26 parol evidence issue specifically. As the party with the burden of proof, Zhenhua must demonstrate
27 the relevance and utility of parol evidence in contract interpretation under Singapore law. It failed

to do so. The Court finds that Zhenhua failed to meet its burden of demonstrating probable validity based on the function of the letters as parol evidence.

The Court acknowledges Zhenhua's point that, regardless of any parol evidence rule, the interest and profit letters could still be considered as factual evidence which informs the probable validity of its claims. For example, the letters could constitute Metamining's admissions of the fact of nondelivery of the coal and, more importantly, the amount of interest and profit owed by Metamining. But even if this were so, the critical question here in determining whether there is probable validity sufficient to warrant an attachment at this time is *when* Metamining had to pay the interest and profit; absent a failure *timely* to pay these items, there is no current breach. For the timing of the payments, the Logistic Cooperation Agreement and addendum (providing that the next installment of $10,563,698.63 be paid "before" December 31, 2013 and that the parties abide by clauses 3.2 and 3.3 on profit sharing but establishing no specific time for payment) are controlling; the provision in the letters regarding timing (*i.e.*, upon Zhenhua's demand) have no effect unless they are treated as parol evidence interpretive of the contract. For the reasons stated above, Zhenhua has failed to establish that there is a present breach of the agreement.[1]

### III.  CONCLUSION

For the foregoing reasons, the Court denies Zhenhua's motion for a new or successive writ of attachment.

This order disposes of Docket No. 39.

IT IS SO ORDERED.

Dated: August 5, 2013

EDWARD M. CHEN
United States District Judge

---

[1] That Singapore law applies to this significant issue underscores the appropriateness of deferring to the arbitration in Singapore to resolve questions of interim and final relief.

9